BURKE, Judge.
Curtis Maurice Sanders was convicted of third-degree burglary, a violation of § 13A-7-7(a), Ala.Code 1975, and was sentenced to 46 months in prison; however the sentence was suspended, and Sanders was placed on probation for 2 years. He was also ordered to pay $100 to the Alabama Department of Forensic Sciences.
Prior to trial, Sanders filed a motion to dismiss the indictment, alleging that the structure that was the subject of the burglary charge did not constitute a building for purposes of the burglary statute. That motion was denied and Sanders proceeded to trial. After the evidence was presented, he argued that the State had failed to prove that the house was a “building” for purposes of the third-degree-burglary statute.
Roderick Turner testified that he owned a house located on 8th Avenue North in Birmingham that had been left to him by his mother. He testified that he moved out of the house in 2006 because the house needed a number of repairs and he did not intend to make the repairs. He continued to store some furniture, personal items, and building supplies in the house. He testified that electrical wiring, sheetrock, and insulation were present in order to make repairs on the house. He also maintained the yard and paid property taxes on the house up until the time of the offense. Turner stated that there were three exterior doors to the house and that each was locked.
Turner testified that, on the day of the offense, he received a telephone call from a neighbor and then telephoned the police to request that they go to the house. When he arrived at the house, he saw that the police had apprehended Sanders and another man. He further observed that the front door had been pushed or kicked open.[1] Turner testified that he had not given Sanders or the other man permission to enter the house.
Turner admitted that he was aware that a condemnation report had been prepared on the house in 2010, but he was unaware of any official condemnation notice. He stated that he personally had decided to tear the house down and that a date had been set for the demolition; however, he maintained that he was not abandoning the house until that date. Specifically, he stated that he was keeping the yard cut and was continuing to store some personal items there “that has to be gone through but not too much of anything of any value.” (R. 23.)
*730 On cross-examination, Turner acknowledged that there were large holes in the roof at the time of the incident that had not been repaired. He acknowledged that the City of Birmingham had placed a notice of condemnation on the house and that he had called the City office in response to the notification. He was told that he had an option to make repairs, but “[i]t was more money and time than I was going to — that I did not want to put into it.” (R. 28.) When asked if the notice stated that the house was “unrepairable,” Turner initially stated that it did not but subsequently indicated that the notice “came up missing” and it provided only a telephone number. (R. 29.) He also acknowledged that the “red condemnation note” had possibly been on the door for months and was there at the time of the offense. He also confirmed that no one was living in the house at the time. He stated that, although the door was open, he had not been to the house for possibly a month so he did not know how long the door had been opened. He also testified that certain items were eventually determined to be missing from the house but none were found on or with Sanders.[2]
Officer Douglas Crawford, of the Birmingham Police Department, testified that he was called to the scene of the incident. He said that he and another police vehicle were the first to arrive. The front door of the house was shut but unlocked. The back door was open. He stated that they heard voices inside and entered through the front door. They saw Sanders and the other man holding some household items.[3] When asked what the men did upon the police officers’ entry, Officer Crawford testified that “I actually had to make some noise. I think I said ‘Excuse me gentlemen,’ or something like that before they even noticed we were there. But when I caught their attention, they dropped the items.” (R. 42.) On cross-examination, Officer Crawford stated that the men were under surveillance for a while before the officers entered the house. During that time, nothing was taken to the truck parked in the backyard; the truck was pulled in hood-first; neither Sanders nor the other man had any bag to put property into; the doors had not been kicked in;[4] and the men were startled by the officers’ presence. Sanders and the other man left the property in the house and they were then arrested.
Thereafter, the State rested.
Curtis Faggard, who was in charge of keeping the City of Birmingham’s condemnation department’s records, testified as to the condemnation-write-up sheet on the house on 8th Avenue North. He testified that the write-up sheet “gives us a brief description of the structure as far as deterioration is concerned.” (R. 55.) He further testified that the write-up sheet “goes along with the notice that was sent [mailed] to the homeowner.” (R. 55.) Faggard testified that a red placard had been placed on the property with the address, date, and inspector’s number on it; however, the property owner had not been notified in this case, nor had the house been scheduled for demolition. Faggard acknowledged that the notice on the door of the house stated that it was not feasible to repair the property. On cross-examination, Faggard stated that the property had not yet been condemned because the owner had not been notified. After notification, the owner has 30 days to respond as to whether the repairs will be made. Thereafter, if the owner does not timely respond, the matter goes to the city council for condemnation in 35-40 days. Fag-gard stated that the house had still not been condemned at the time of trial.
*731 On cross-examination, Faggard conceded that the 30-day limit for the owner to respond had been exceeded; however, because of the workload in the department, no further action had been taken by the City. Finally, Faggard confirmed that, “once a notice has been sent or put up, even if it’s not officially condemned and scheduled, ... people [are not] allowed to live in the house at that point.” (R. 64.)
Sanders testified that he and the other man entered the house to determine whether anything could be salvaged. He stated that, if they had found metal or other salvageable materials, they would have attempted to locate the owner. They believed that the house was abandoned because the front door was open and, because it was raining that day, it was raining in the house. He stated that he had a cookbook in his hand when the police officer entered the house but that he was only looking at the book. He further testified that the house was extremely junky and that there was no indication that anyone was living in the house.
On appeal, Sanders argues that the State failed to prove that the structure that he entered was a “building” as required by § 13A-7-7, Ala.Code 1975, the statute defining third-degree burglary. Because the facts are undisputed and this case involves the application of an issue of law to those facts, our review is de novo. Ex parte Walker, 928 So.2d 259, 262 (Ala.2005).
The term “building” as used in third-degree burglary is defined as
“[a]ny structure which may be entered and utilized by persons for business, public use, lodging or the storage of goods, and such term includes any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein, and such term includes any railroad box car or other rail equipment or trailer or tractor trailer or combination thereof. Where a building consists of two or more units separately occupied or secure, each shall be deemed both a separate building and a part of the main building.”
§ 13A-7-R2), Ala.Code 1975.
Here, the house, although in disrepair, was still being used for storage when Sanders unlawfully entered the building and began looking through the property inside for items that he wanted. The yard was also still being maintained and the property owner visited the house monthly. The fact that the rear door was open did not justify Sanders’s entry. See Davis v. State, 737 So.2d 480, 483 (Ala.1999) (“The State is no longer required to prove that the defendant broke and entered the premises. Instead, the strictures of that element have been replaced with the general requirement of a trespass on premises through an unlawful entry or an unlawful remaining.”). Moreover, the red notice on the door did not affect the unlawfulness of Sanders’s entry because he testified that he did not see the notice. When asked if he thought that the building had been condemned, Sanders testified, “That sign was not on the door at the time.” (R. 65.) The house owned by Turner and used to store some of his belongings constituted a building under § 13A-7-7, Ala.Code 1975. Compare Sanders v. State, [Ms. CR-10-1091, December 14, 2012] — So.3d (Ala.Crim.App.2012)(holding that the structure purchased solely for demolition by the Birmingham Airport Authority did not constitute a building for the purpose of third-degree burglary).[5] In Sanders, the structure was not used for residency or *732 inhabitation or storage or any form of personal use. The structure had been purchased solely for the purpose of noise abatement for the airport and its intention was always that the structure be demolished. In the present case, the house had been inhabited four years before the offense and continued to be maintained and used for storage at the time of the offense. In fact, much of the materials the owner stated remained in the house were for the purpose of making repairs to the house so that it could be restored for his personal use.
Third-degree burglary is committed when a person “knowingly enters or remains unlawfully in a building with intent to commit a crime therein.” § 13A-7-7(a), Ala.Code 1975 (emphasis • added). The jury could have reasonably found from the evidence that Sanders unlawfully entered Turner’s house with the intent to find and take property. Therefore, Sanders’s conviction for third-degree burglary and his resulting sentence are due to be affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, KELLUM, and JOINER, JJ., concur.

. On cross-examination, he acknowledged that he saw only that the door was open.

. Turner stated, however, that he did not look into the back of Sanders’s truck that was in the backyard of the house at the time of the offense.

. Officer Crawford was uncertain as to what household items were in the men's possession.

.Officer Crawford testified that "both reports reflect that there didn't appear to be any force used.” (R. 48.)

. We note that Sanders was also the appellant in that case.